UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>               Plaintiff,<br>    v.<br>ESTER OZKAR,<br>              Defendant. | Case No. 21-cr-00144-CRB-1 (TSH)<br><br>**ORDER RE: MOTION FOR INTERNATIONAL TRAVEL**<br>Re: Dkt. No. 13 |

Defendant Ester Ozkar moves for an order to permit international travel. ECF No. 13. He states that he is a native of Turkey, where a large majority of his maternal and paternal family still reside (though his mother and father are deceased). He moved to the United States in 1978 and became a naturalized citizen in 1982. His wife, children and grandchildren all reside in the U.S. Ozkar says that before the pandemic he visited family in Turkey at least once a year. He has been unable to travel since 2019 because of COVID-19. He is now fully vaccinated and travel to Turkey is permitted, save for the condition of pretrial release that he remain in the Northern District of California.

By way of background, the government filed a superseding information against Ozkar on May 12, 2021, and seven days later he was arraigned and pled guilty that same afternoon. At the arraignment he was released without a bond or requiring a custodian. Ozkar is currently scheduled to be sentenced in December 2021. The sentencing guidelines dictate a sentence of 21-27 months, but the government has agreed to recommend a sentence below the guidelines range of 14 months. Ozkar requests permission to travel to Turkey from August 15 to September 7, 2021. His pretrial

services officer does not object.

But the government does. The government observes that the standard for determining conditions for a defendant pending sentencing is governed by 18 U.S.C. § 3143(a)(1),[1] which states that "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence . . . be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142 (b) or (c)," meaning on his own recognizance or on an unsecured appearance bond, or under other release conditions. The burden of proving that the defendant will not flee and is not a danger is on the defendant. Fed. R. Crim. Proc. 46(c).

The government argues that allowing Ozkar to travel to his country of origin and stay where a large portion of his family lives encourages flight, especially given the government's understanding that he speaks Turkish fluently and has strong ties to the community in Turkey. The risk of flight is particularly strong, the government asserts, given that Ozkar is likely facing a custodial sentence in the U.S. The government also argues that international travel is risky during the pandemic, especially given the new COVID variants now spreading.

Ozkar retorts that he has never been a flight risk. He says he was under investigation and was cooperating with the government since September 2020, knowing charges would be filed, and he did not flee. Instead, he pled guilty immediately and paid more than $500,000 in restitution. Ozkar says that his immediate family is here and he would not abandon them. As to COVID, he again points out that he is fully vaccinated, and he says he will follow the advice of the government to test and isolate as necessary.

Let's think this through. Normally, risk of flight is the risk that a defendant will run away and be difficult to find and bring back. Here, if Ozkar's motion is granted, the odds that this will happen are 100%. After all, his request is that he be given back his passport and allowed to travel to Turkey, which is on the other side of the world and beyond the reach of U.S. law enforcement

---

[1] The reference to subsection 3143(a)(2) in the government's brief appears to be a typo, as the brief correctly quotes from subsection (a)(1).

(except for possible extradition).

The flight risk in this context is the risk that Ozkar will not come back. And we have to think about that risk carefully. Let's assume Ozkar's current intention is to return. He will then go on a three-week reunion with many family members he has not seen in a long time. At the end of that trip, he will pack his bags and go to the airport, and he must decide whether to board the plane. He knows what lies on the other side of that plane ride: prison. Ozkar won't be like a regular criminal defendant present in the U.S. who figures that if he skips his sentencing or fails to surrender, he will just be arrested by the U.S. Marshals, the FBI, or the police. If you're in the U.S., you can't outrun law enforcement forever. By contrast, Ozkar will be able to turn around and leave the airport, and nothing will happen to him. He can get up the next morning a free man. And as he is standing in the airport, weighing his decision, he will know that. The temptation for him not to get on that plane will be huge. How much temptation can a man be expected to bear?

The Court understands that Ozkar has ties to the community here as well. His adult children and their children live here. His wife lives here as well, although counsel clarified at the hearing that she plans to accompany him on the trip to Turkey, raising the risk that they could together decide not to return. Perhaps, as counsel suggests, overstaying his visa in Turkey would eventually lead to problems (though it is amazing how long some people are able to overstay their visa in the U.S.); and, perhaps, being away from his children and grandchildren for too long will ultimately cause Ozkar to understand what he probably understands right now, which is that serving his prison term is the only way to get back to his old life with his family. Still, the case is not clear, and it is certainly not convincing, that Ozkar will return when he is supposed to or in time for his sentencing. The Court does not see the benefit – and does not see the benefit to Ozkar – of letting him leave his U.S. family situation that has been a source of stability during his criminal case and handing him an effortless opportunity to flee. Once he is in Turkey, he can flee simply by doing nothing. At some level, granting this request for international travel would be unfair to Ozkar because it would mean putting a defendant who has done well on pretrial release into a situation that seems almost to encourage him to do the wrong thing – which wouldn't be good for his sentence.

3

1      The defendant's request for international travel is denied.

2      **IT IS SO ORDERED.**

4      Dated: August 2, 2021

_____
THOMAS S. HIXSON
United States Magistrate Judge