IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA, | Case No. 21-cr-00144-CRB-1 |
| Plaintiff, | |
| v. | **AMENDED ORDER GRANTING MOTION FOR REDUCTION OF SENTENCE** |
| OZKAR, | |
| Defendant. | |

On April 4, 2022, the Court denied Defendant Ester Ozkar's motion for a reduced sentence because he was not in custody, and "compassionate relief is not available to defendants prior to incarceration." See Order Denying Compassionate Release (dkt. 45) (quoting United States v. Fower, 30 F.4th 823 (9th Cir. 2022)). After surrendering to BOP and exhausting his remedies, Ozkar renewed his motion, arguing that the elevated risk of COVID-19 from his high cholesterol and new diabetes diagnosis, in combination with the conditions themselves, justify a reduction of his sentence. See Mot. (dkt 46); Reply (dkt. 51). The Court GRANTS Ozkar's motion and reduces his sentence to time served. The Court amends the terms of his supervised release to begin with an additional term of eight months during which the Court imposes the condition of home incarceration.[1]

## I.   BACKGROUND

At the start of the COVID-19 pandemic, Ozkar was in debt to the Internal Revenue Service. Instead of liquidating his cryptocurrency to help pay his debts, he obtained $483,132 through eight fraudulent applications for PPP and EIDL Advance, federal

---

[1] This order amends the Court's order of August 23, 2022. Dkt. 54.

programs that provided COVID-19 relief for suffering small businesses. Ozkar later rendered substantial cooperation to the government and pleaded guilty to making a false statement to a financial institution in violation of 18 U.S.C. § 1014. Dkts. 7, 8.

The applicable Sentencing Guidelines range was 21 to 27 months. The government asked for a custodial sentence of 14 months in light of his substantial cooperation. See Gov't Memorandum (dkt. 22). The probation officer recommended a custodial sentence of 12 months. PSR (dkt. 23). Ozkar argued that the Court should impose only home confinement. Ozkar Memorandum (dkt. 21). The Court noted that many aspects of this case could support a sentence of home confinement, including Ozkar's low risk of recidivism, his advanced age (67 years old), his lack of criminal history, and his cooperation with the government. See generally Transcript (dkt. 32). But the Court imposed a custodial sentence of 12 months and 1 day largely for general deterrence of white-collar crime. See id.; Judgment (dkt. 25), Statement of Reasons (dkt. 26).

In January 2022, before Ozkar was in custody, he moved for a reduced sentence because of his recent diagnoses for diabetes and elevated cholesterol. First Mot. (dkt. 37). Counsel explained that, "[a]t the time of sentencing, it was unknown to counsel and the Court that Mr. Ozkar suffered from these conditions as Mr. Ozkar had not been to the doctors for many years. However, with the imposition of a custodial sentence and the onset of insomnia, Mr. Ozkar had to consult a doctor for medical treatment," and tests revealed that he was diabetic. Id. at 2. On April 4, the Court denied Ozkar's motion because he was not yet in custody. See Order Denying Compassionate Release. The Court did not reach whether his circumstances might otherwise qualify him for release. Id.

Ozkar then self-surrendered to USP Atwater on April 26 and, on May 16, requested that the warden reduce his sentence. Mot. Ex A. After the warden did not respond for 30 days, Ozkar filed this motion. Mot. at 2.

Ozkar is vaccinated and boosted. Karwande Decl. Ex 1. However, "his medical conditions have worsened, he has received inadequate care at USP Atwater, and COVID-19 is on the rise in the community." Mot. at 1. For a few months after his diagnosis and

prior to his incarceration, Ozkar was receiving treatment for diabetes and high cholesterol. Id. at 2. After being taken into custody, he was not provided with any medications for 18 days. Id. He has since been provided these medications. Id. He told his wife that, while working in extreme heat one day, he couldn't talk for a while, had numbness in his arm, and fainted. Id.; see Mot. Ex. D (dkt. 46-4). As of the filing of the renewed motion, Ozkar was waiting on a refill of his medications. Mot. at 3.

## II. LEGAL STANDARD

A defendant may only move for relief under 18 U.S.C. § 3582(c)(1)(A) if he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

"[A]fter considering" the sentencing factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable," a court may grant the motion to reduce the defendant's sentence in one of two circumstances. First, it may grant the motion "if it finds that . . . extraordinary and compelling reasons warrant such a reduction." Id. § 3582(c)(1)(A)(i). Second, it may grant the motion if the defendant is at least 70 years of age, and meets other conditions not applicable here. See id. § 3582(c)(1)(A)(ii).

The Sentencing Commission has promulgated a policy statement articulating circumstances that constitute "extraordinary and compelling reasons" to reduce a sentence. U.S.S.G. § 1B1.13 cmt n.1. But because the Commission promulgated this policy statement before Congress authorized defendants to file compassionate release motions, the statement is not "binding" as to motions brought by defendants. United States v. Aruda, 993 F.3d 797, 801-02 (9th Cir. 2021). Nonetheless, the policy statement "may inform a district court's discretion." Id., see, e.g., United States v. Rekhi, 2021 WL 411376, at *2-3 (N.D. Cal. Feb. 4, 2021).

The policy statement lists five circumstances that establish "extraordinary and compelling reasons." First, the standard is satisfied if "[t]he defendant is suffering from a

terminal illness (i.e., a serious and advanced illness with an end of life trajectory)." U.S.S.G. § 1B1.13 cmt. n.1(A)(i). Second, it is satisfied by "a serious physical or medical condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. § 1B1.13 cmt. n.1(A)(ii). Third, the standard is met if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id. § 1B1.13 cmt. n.1(B). Fourth, the standard is satisfied if family circumstances requiring the defendant to care for minor children or a spouse or registered partner. Id. § 1B1.13 cmt. n.1(C). Finally, a catch-all provides for relief if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. § 1B1.13 cmt. n.1(D).

The policy statement also sensibly concluded that a court should reduce a sentence only if it finds that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Courts "take into account" four factors when determining dangerousness: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

### III. DISCUSSION

The Court concludes that the revelation of Ozkar's diabetes, combined with his age and the increased risk of COVID-19, constitutes an "extraordinary and compelling reason" under § 3582(c)(1)(A). Because the sentencing factors permit a reduction in sentence and Ozkar is not dangerous, the Court reduces Ozkar's sentence.

### A.     Extraordinary and Compelling Reason

Although this case does not perfectly fit one of the circumstances of the Sentencing Commission's nonbinding policy statement, Ozkar's new diagnosis of diabetes combined with his advanced age and the seriousness of the COVID-19 pandemic justify a reduction in his sentence.  It is true that Ozkar is fully vaccinated and boosted, which reduces the risk of more serious symptoms.  See United States v. Chambers, 2021 WL 4951444, at *4 (N.D. Cal. Oct. 25, 2021).  Nonetheless, advanced age and diabetes significantly increase one's risk of COVID-19.  See Centers for Disease Control, People With Certain Medical Conditions (May 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html ("Having either type 1 or type 2 diabetes can make you more likely to get very sick from COVID-19.").  At the time of sentencing in December 2021, Ozkar's advanced age was before the Court, but Ozkar's diabetes was diagnosed only later.  See PSR (stating that Ozkar had "reported no major health issues").  The Court concludes that Ozkar meets the standards of "extraordinary and compelling reasons" in the Commission's policy statement.  U.S.S.G. § 1B1.13 cmt. n.1.[2]

### B.     Sentencing Factors

Further, the Court concludes that compassionate release is appropriate under the sentencing factors in 18 U.S.C. § 3553(a).  Section 3553(a)(2) notes "the need for the sentence imposed[] to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct."  At sentencing, when considering Ozkar's unique history and characteristics, the Court emphasized that other facts could support a non-custodial sentence but these factors militated for custody.  The Court explained that "it's rare in a white-collar case that I [find] home confinement appropriate" because of the importance of "general deterrence" of white-collar fraud.  See Transcript at 22-23.  The Court persists in

---

[2] While Ozkar alleges that BOP failed to get him his medications in his first few months of incarceration, the Court's finding of an "extraordinary and compelling reason" is not based on this allegation.  This motion is not the proper procedural avenue for his complaint.  See BOP Program Statement 1330.18, available at https://www.bop.gov/policy/progstat/1330_018.pdf (describing the BOP's Administrative Remedy Program).

5

its view that general deterrence of white-collar fraud requires custodial time in all but "rare" instances. But now that Ozkar has now served approximately four months in custody, this goal of general deterrence is satisfied. The Court continues to conclude that the other sentencing factors permit this sentence reduction.

### C.    Other Factors

There is no dispute in this case that Ozkar exhausted his remedies. Further, the Court finds (as the government does not dispute) that Ozkar, who was incarcerated for a non-violent offense, is not a danger to the community. See 18 U.S.C. § 3142(g).

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Ozkar's motion for reduction of his sentence to time served. The Court previously ordered a three-year term of supervised release. See Amended Judgment (dkt. 36). The Court now orders an <u>additional term of supervised release of eight months, to begin immediately after his release, during which Ozkar is subject to the special condition of home incarceration</u>. The terms of his release are therefore amended as follows:

a. Following his release, Ozkar shall be transported directly to the proposed release address in Novato, California (the residence);

b. Commencing at the time of his arrival at the residence, the Court imposes a special term of supervision period of eight months of home incarceration;[3]

c. During these eight months, all previously ordered conditions of supervised release shall be in effect where applicable;

d. After those eight months are concluded, the three-year term of supervised release will commence as originally ordered. See Amended Judgment (dkt. 36).

The BOP is directed to release Ozkar. The government shall serve a copy of this order on the Warden at USP Atwater immediately.

---

[3] Under home incarceration, Ozkar is restricted to his residence at all times except for medical necessities and court appearances or other activities specifically approved by the court.

1  **IT IS SO ORDERED.**

2  Dated: August 25, 2022



3  CHARLES R. BREYER
United States District Judge